KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215

(202) 326-7900

FACSIMILE:
(202) 326-7999

May 30, 2025

*By CM/ECF*

Nwamaka Anowi
Clerk of Court
U.S. Court of Appeals
 for the Fourth Circuit
1100 East Main Street, Suite 501
Richmond, Virginia 23219

   Re: *City of Huntington, West Virginia and Cabell County Comm'n v. AmerisourceBergen Drug Corp., et al.*, Nos. 22-1819 & 22-1822

Dear Ms. Anowi:

  Plaintiffs-Appellants City of Huntington, West Virginia and Cabell County Commission ("Cabell/Huntington") submit this letter brief in response to the Court's order granting leave to file letter briefs addressing any new, relevant cases in this or other jurisdictions. *See* Dkt. 139.

## INTRODUCTION

  As this Court and the district court recognized, the opioid epidemic has led to "'an extraordinary public health crisis'" in Cabell County and Huntington. Order Certifying Question at 9, Dkt. 137 ("Cert. Order") (quoting *City of Huntington v. AmerisourceBergen Drug Corp.*, 609 F. Supp. 3d 408, 419 (S.D. W. Va. 2022)). In its opinion declining to answer the question this Court certified,[1] the West Virginia Supreme Court of Appeals ("WVSCA") agreed, recognizing the "serious opioid epidemic facing Huntington and Cabell County." WVSCA Majority Op. Declining Certified Question at 1, Dkt. 138-1 ("WVSCA Maj. Op."). The WVSCA acknowledged that the "tragic effects of the opioid epidemic in Huntington and Cabell County are well-known and accepted by the parties." *Id.* at 12.

  Cabell/Huntington brought public nuisance claims against Appellees for unreasonably interfering with public health and safety when shipping tens of millions of opioids to Cabell/Huntington. *See* Cert. Order at 5. Following a bench trial in 2021, the district court ruled in favor of Appellees, holding that West Virginia law limited public nuisance claims to "conduct

---

[1] This Court certified to the WVSCA the question of whether, "[u]nder West Virginia's common law, . . . conditions caused by the distribution of a controlled substance [can] constitute a public nuisance and, if so, what are the elements of such a public nuisance claim?" Cert. Order at 4.

that interferes with public property or resources" and did not allow claims related to "distribution or sale of a product." *Huntington*, 609 F. Supp. 3d at 472.

In certifying the question, this Court "hesitate[d] to infer such limits on West Virginia's common law of public nuisance" given WVSCA decisions employing "broad language . . . in describing public nuisance claims" and "decisions by West Virginia trial courts," including the Mass Litigation Panel ("MLP"), "holding that common law claims of public nuisance are cognizable against distributors of opioids." Cert. Order at 14. It observed that the MLP characterized the district court's opinion as placing "'an artificial constraint on the common law cause of action for public nuisance,'" a claim the WVSCA has called "'a flexible area of the law that is adaptable to a wide variety of factual situations.'" *Id.* at 15-16.[2] This Court stated that it "do[es] not think that the authorities cited by the defendants," including out-of-state authorities and the Restatement (Third) of Torts: Liability for Economic Harm (2020) ("Restatement (Third)") provision addressing public nuisance suits for "economic harm," "control the outcome of this case." *Id.* at 16-17.

In its opinion declining to answer the question, the WVSCA nonetheless shed light on these questions. Cases decided since the parties briefed the questions to this Court further indicate that West Virginia law imposes no per se bar on public nuisance claims related to opioids. And new authorities illuminate the district court's legally erroneous rulings on Appellees' unreasonable interference with a public right and on the causation standard under West Virginia law.

## ARGUMENT

**I.    West Virginia Does Not Bar A Cause Of Action For Public Nuisance Based On Unreasonable Distribution Of Opioids**

**A.    The WVSCA Confirmed That The Existence Of A Public Nuisance Is A Factual Issue**

The district court held, as a matter of law, that West Virginia public nuisance law does not apply where opioid distribution caused the nuisance. *Huntington*, 609 F. Supp. 3d. at 471-75. Among the reasons it gave was the discussion in the Restatement (Third) § 8 comment g, calling the common law of public nuisance "an inapt vehicle" for addressing nuisance in this context. *Id.* at 472. The court stated that the WVSCA "followed the Restatement of Torts" on public nuisance. *Id.* Cabell/Huntington argues that the WVSCA has followed the definition of

---

[2] Quoting Findings of Fact and Conclusions of Law on Order Denying Pharmacy Defendants' Motions To Dismiss Complaints and Amended Complaints at 30 ¶ 70, Civil Action No. 21-C-9000-PHARM (W. Va. MLP Aug. 3, 2022), *available at* https://nationalopioidsettlement.com/wp-content/uploads/2022/08/2022.08.03_Panels-FOFCOL-on-Order-Denying-Pharmacy-Defs-MTDs.pdf.

public nuisance in the Restatement (*Second*) of Torts § 821B (1979) ("Restatement (Second)") and has not adopted the Restatement (Third)'s discussion of nuisance, and that the section on which the district court relied is inapplicable because it concerns suits brought by private parties for economic loss under a public nuisance theory, not governmental actions to abate a nuisance. *See* Appellants' Br. 31-44, Dkt. 82; Appellants' Reply Br. 10, Dkt. 93.

While the WVSCA declined to answer the certified question, its opinion sheds light on these related issues. First, the majority observed that "whether a nuisance exists is a factual issue." WVSCA Maj. Op. 14. Reviewing the canonical nuisance cases relied on in Appellants' Brief (at 31-32), the WVSCA summarized their "common thread: whether a nuisance exists 'raises a question of fact.'" WVSCA Maj. Op. 15 (quoting Syl. pt. 5, *Sharon Steel Corp. v. City of Fairmont*, 334 S.E.2d 616, 618 (W. Va. 1985)). This conclusion is at odds with the district court's adoption of the Restatement (Third)'s conclusion rejecting "public nuisance based on the sale and distribution of a product," including opioids, as a matter of law. 609 F. Supp. 3d at 472.

Second, the concurring and dissenting WVSCA opinions, representing a majority of the Justices, referred to the governing Restatement (Second) definition. In her concurring opinion, Justice Walker explained that the WVSCA, in *Duff v. Morgantown Energy Associates*, 421 S.E.2d 253, 257 n.6 (W. Va. 1992) (per curiam), stated that West Virginia's definition of a public nuisance "is consistent with the *Restatement (Second) of Torts* § 821B(1) (1979), which defines a public nuisance as 'an unreasonable interference with a right common to the general public.'" WVSCA Concurring Op. 6, Dkt. 138-2 (Walker, J., concurring). And in his dissenting opinion, Chief Justice Wooton, joined by Judge Salango, wrote that the WVSCA noted in *Duff* that its earlier opinion in *Hark v. Mountain Fork Lumber Co.*, 34 S.E.2d 348, 354 (W. Va. 1945), "is consistent with the *Restatement (Second) of Torts* § 821(B)(1) (1979), which defines a public nuisance as 'an unreasonable interference with a right common to the general public.'"). WVSCA Dissenting Op. 6, Dkt. 138-3 (Wooten, J., dissenting). None of the three WVSCA opinions on certification mentions the Restatement (Third), nor has the WVSCA otherwise adopted the provision of the Restatement (Third) on which the district court relied.

### B. The Ohio Supreme Court Issued An Opinion Confirming That A Legislature May Abrogate Common-Law Public Nuisance Actions Related To Opioids

The Ohio Supreme Court recently held that the Ohio Product Liability Act "abrogates product-liability claims, including product-related public-nuisance claims seeking equitable relief." *In re National Prescription Opiate Litig.*, 2024 WL 5049302, at \*7 (Ohio Dec. 10, 2024). That case turned on a state statute, the Ohio Product Liability Act, that "expressly abrogates all common-law public-nuisance claims." *Id.* at \*6.

By contrast, West Virginia's Legislature considered but decided *not* to enact a statute abrogating common-law nuisance claims. *See* Appellants' WVSCA Br.[3] 27-28. Instead, it enacted

---

[3] *Available at* https://www.courtswv.gov/sites/default/pubfilesmnt/2024-11/24-166%20Petitioners%20Brief.pdf.

a narrow statute limiting public nuisance cases arising out of the "lawful design, marketing, manufacture or sale of firearms," W. Va. Code § 55-18-1(a), while declining to limit cases related to opioids. Under the doctrine of *expressio unius est exclusio alterius*, this demonstrates the Legislature's recognition of public nuisance claims involving products *other than* firearms. *See* Appellants' WVSCA Br. 27-28. Indeed, the West Virginia Legislature authorized cities and counties like Cabell/Huntington to take "appropriate and necessary actions for the elimination of hazards to public health and safety and to abate or cause to be abated anything . . . determine[d] to be a public nuisance." W. Va. Code § 7-1-3kk (county authority); *see id.* § 8-12-5(22) (municipal authority). Regarding opioids, the Legislature not only declined to intervene in state opioid litigation (first filed in 2012), but enacted legislation creating an abatement fund for monies the State received from settlements in that litigation. *See id.* § 5-31-1.

In a recent decision, the West Virginia Intermediate Court of Appeals confirmed that the Ohio Supreme Court decision has no impact on opioid litigation in West Virginia. It explained that the Ohio "determination was made by applying Ohio statutory law, [so] it does not affect this Court's decision" on the limits of West Virginia nuisance law. *A.D.A. ex rel. L.R.A. v. Johnson & Johnson*, 912 S.E.2d 37, 59 n.36 (W. Va. Ct. App. 2024). Decisions of the West Virginia Intermediate Court of Appeals are binding on West Virginia state courts statewide, unless overturned by the WVSCA. *See* W. Va. Code § 51-11-9(b).

      C.    **Cases From Other Jurisdictions Confirm West Virginia's Flexible Approach To Public Nuisance**

In a decision dismissing public nuisance claims brought by private parties in the opioid context, Judge Breyer defined a public nuisance with reference to the Restatement (Second)'s definition. *See In re McKinsey & Co., Inc. Nat'l Prescription Opiate Litig.*, 2024 WL 2261926, at *8 (N.D. Cal. May 16, 2024). He dismissed the claims based on the private plaintiffs' failure to plead special injuries, as private parties bringing a public nuisance action must do. *Id.*

Distinguishing the district court's decision in the instant case, the court held that "'every West Virginia state court that has addressed identical public nuisance claims against opioid defendants has come to a different conclusion than Judge Faber on the scope and contours of West Virginia public nuisance law.'" *Id.* at *9 (quoting *In re National Prescription Opiate Litig.*, 622 F. Supp. 3d 584, 600 n.20 (N.D. Ohio 2022), *vacated and remanded on other grounds*, 2025 WL 354758 (6th Cir. Jan. 31, 2025)). Citing *Sharon Steel*, it held that West Virginia, like most other States, "recognizes public nuisances based on an interference with the health or safety of the public." *Id.* at *9 & n.9 (citing 334 S.E.2d at 621). It accordingly declined to dismiss the West Virginia public nuisance claims on the grounds that West Virginia law could not, as the district court here held, support a public nuisance claim concerning opioids. *Id.* at *9-10.

A federal district court in Washington recently denied a motion to dismiss a county's public nuisance claim related to opioids. *See King Cnty. v. Express Scripts, Inc.*, 2025 WL

1082130 (W.D. Wash. Apr. 10, 2025).  It found the allegations satisfied Washington's definition of a nuisance to include "'unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others.'" *Id.* at *4 (quoting Wash. Rev. Code § 7.48.120).

Similarly, a federal district court in Alaska held that the State of Alaska adequately alleged a public nuisance claim in the context of the opioid crisis.  *See Alaska v. Express Scripts, Inc.*, 2024 WL 2321210, at *5 (D. Alaska May 22, 2024).  It rejected limitation of public nuisance claims to those involving "property" or not involving "a lawful product." *Id.* at *2-3.  It based this decision on the fact that Alaska's Supreme Court adhered to the Restatement (Second) and on "the strong trend of Alaska Superior Court decisions allowing public nuisance claims in parallel contexts." *Id.* at *2.  Discussing the examples given in Restatement (Second) § 821B, the court held that "they serve to highlight that a nuisance occurs when private conduct interferes with the 'interests of the community at large'" because they "imposed negative externalities on the community at large." *Id.* at *4;[4] *see also* Ruling Re: Demurrer at 7-9, *People v. Express Scripts, Inc.*, No. 23-STCV-20886 (Cal. Super. Ct., L.A. Cnty., Dec. 17, 2024) (attached as Exhibit A) (finding "*Alaska* . . . persuasive" in denying motion to dismiss opioid-related public nuisance claim).

A federal district court in Missouri rejected arguments by the defendants, including Appellees, that Missouri law bars public nuisance claims premised on distribution of "lawful products." *Lester E. Cox Med. Ctrs. v. Amneal Pharm., LLC*, 2023 WL 6323797, at *2 (W.D. Mo. Sept. 28, 2023) (denying distributor motion to dismiss).  The court noted that "Missouri has adopted the widely accepted definition of 'public nuisance' set forth in the Second Restatement: 'A public nuisance is an unreasonable interference with a right common to the general public.'" *Id.* at *3 (quoting *State ex rel. Dresser Indus., Inc. v. Ruddy*, 592 S.W.2d 789, 792 (Mo. 1980) (en banc) (quoting Restatement (Second) § 821B(1)); and citing *City of Lee's Summit v. Browning*, 722 S.W.2d 114, 115 (Mo. Ct. App. 1986) ("A public nuisance is any unreasonable interference with common community rights such as the public health, safety, peace, morals or convenience.")).

II.     **Recent Cases Confirm That The District Court Erred In Assessing Appellees' Unreasonable And Unlawful Interference With A Public Right**

West Virginia defines a public nuisance as "an act or condition that unlawfully operates to hurt or inconvenience an indefinite number of persons." *State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 488 S.E.2d 901, 921 (W. Va. 1997).  Similarly, the Restatement (Second), which the WVSCA follows, defines public nuisance as "'an unreasonable interference

---

[4] The Alaska federal court rejected as an "outlier" an Alaskan state trial court's contrary holding that distribution of pharmaceuticals could not constitute a public nuisance.  *See Express Scripts*, 2024 WL 2321210, at *4 & n.38 (citing *Alaska v. Walgreen Co.*, 2024 WL 1178352, at *3 (Alaska Super. Ct. Mar. 1, 2024)).

with a right common to the general public.'" *Duff*, 421 S.E.2d at 257 n.6 (quoting Restatement (Second) § 821B(1)). The evidence established that Appellees acted unlawfully and unreasonably by violating federal and state laws imposing duties on distributors of opioids. Recent decisions interpreting the scope of these duties confirm the district court's error in narrowing them.

> A. **The District Court Erroneously Narrowed Appellees' Duties Under The Federal Controlled Substances Act**

As this Court explained, the federal Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801-904, and its implementing regulations require distributors of opioids to "'provide effective controls and procedures to guard against . . . diversion of controlled substances.'" Cert. Order at 9 (quoting 21 C.F.R. § 1301.71(a)) (ellipsis in Cert. Order). The CSA's regime requires distributors to "'design and operate a system to disclose . . . suspicious orders of controlled substances'" and "'inform' the [Drug Enforcement Administration ('DEA')] of suspicious orders [they] discover[ ]." *Id.* (quoting 21 C.F.R. § 1301.74(b)). This means "distributor[s] must either decline to ship or conduct due diligence before shipping a suspicious order." *Id.* at 9 & n.8 (citing *Masters Pharm., Inc. v. DEA*, 861 F.3d 206, 212 (D.C. Cir. 2017) ("*Masters*")). Due diligence requires contacting the pharmacy "to request an explanation" for the order's unusual characteristics and then "verif[y] that explanation." *Masters*, 861 F.3d at 218, 221- 22 (citing *Southwood Pharms., Inc.*, 72 Fed. Reg. 36,487, 36,500 (DEA July 3, 2007) ("*Southwood*")).

The district court erred by narrowing these duties. It held that distributors need only "guard against" selling to "pharmacies that are essentially acting as adjuncts of the illicit market." *Huntington*, 609 F. Supp. 3d at 477. That holding led the court to dismiss evidence that Appellees repeatedly increased suspicious order thresholds and failed to investigate pharmacies' orders. *See* Appellants' Br. 15-19. The court's erroneous ruling on the scope of Appellees' CSA duties drove its mistaken conclusions that Appellees did not act unlawfully or unreasonably to cause the nuisance in Cabell/Huntington.

Recent decisions confirm that the district court mistakenly narrowed distributors' duties under the CSA and therefore erroneously assessed the unlawfulness and unreasonableness of Appellees' conduct. In November 2023, a federal district court denied Appellee AmerisourceBergen's motion to dismiss the federal government's claim that AmerisourceBergen violated the CSA, "thereby contributing to the nation's burgeoning opioid crisis." *United States v. AmerisourceBergen Corp.*, 2023 WL 7311183, at *1 (E.D. Pa. Nov. 6, 2023). The court explained that, "[i]f distributors can manipulate their systems to define the meaning of a suspicious order," they would be able to obviate the other requirements the CSA imposes. *Id.* at *10. This holding underscores the district court's error in ignoring evidence of Appellees' practice of raising suspicious order thresholds, which allowed pharmacies to order vast quantities without triggering review. *See* Appellants' Br. 15-19. As the court explained, "allow[ing] distributors to subject themselves to their own strategically crafted standards [is] anathema to the CSA's central purpose." *AmerisourceBergen*, 2023 WL 7311183, at *10.

The *AmerisourceBergen* decision confirms that the *Masters* and *Southwood* decisions, on which Appellants rely, *see* Appellants' Br. 8-10, 46-65, provide the "analytical framework" for distributors' CSA duties, 2023 WL 7311183, at *2, *8-9 (citing *Masters* to describe distributors' CSA duties and rejecting AmerisourceBergen's argument that "*Masters* 'is of no import here'"). As Cabell/Huntington explained, the district court here applied an "overly narrow interpretation of the CSA [that] conflicts with . . . *Masters*, where the D.C. Circuit affirmed DEA's broader interpretation of distributors' duties." Appellants' Br. 46. *Masters* and *Southwood* held that, once a distributor has reported a suspicious order, "it must make one of two choices: decline to ship the order, or conduct some 'due diligence' . . . to determine that the order is not likely to be diverted into illegal channels." *Masters*, 861 F.3d at 212-13 (quoting *Southwood*, 72 Fed. Reg. at 36,500). *Masters* and *Southwood* contradict the district court's overly narrow interpretation of distributors' CSA duties and also disprove Appellees' denial of their duty to investigate or else block suspicious orders. *See* Appellees' Br. 55, Dkt. 84.

The *AmerisourceBergen* court relied on a 2023 DEA enforcement action, *Morris & Dickson Co.*, which affirmed that "a distributor has a continuing obligation to perform due diligence . . . throughout [its] relationship with [a] customer," including "at the ordering level." 88 Fed. Reg. 34,523, 34,526, 34,535 (DEA May 30, 2023). By contrast to *Morris & Dickson*, the district court here overlooked extensive evidence that Appellees failed to investigate suspicious orders bearing the same red flags that *Morris & Dickson* highlighted. *See* Appellants' 28(j) Letter, Dkt. 103 (discussing *Morris & Dickson*); *see also* Appellants' Br. 61-65.

**B.     Recent Cases Confirm The Public Nature Of The Rights At Issue**

Recent cases have rejected the argument, which Appellees advance here, that opioid-related harms are not "common to the general public" for purposes of public nuisance law. *E.g.*, Appellees' Br. 62-63. In *McKinsey & Co.*, the court held that the plaintiffs had adequately alleged "interference with a right common to the public," namely, "the public's rights 'to use and enjoy public spaces without fear, danger, harassment, theft, and without encountering filth, disease, and blight, and to be free from the deleterious health and safety effect of an illegal drug trade.'" 2024 WL 2261926, at *8. And in *King County v. Express Scripts*, the court held that the county adequately alleged harms to "property managed by the County, including parks, bus stops, and areas surrounding King County Metro Transit operations bases," including "an increase in the homeless population that uses County parks for homeless encampments," which "affected the rights of the King County community" for purposes of interfering with a public right. 2025 WL 1082130, at *7.

The federal district court in the Alaska *Express Scripts* case likewise rejected the claim that "the opioid-related harms the State alleges in this case interfere with individual, not collective, rights." 2024 WL 2321210, at *5. The harms included interference with "the public health, the public safety, the public peace, the public comfort and the public convenience" and relate to "Alaskans' safety in their communities, their ability to enjoy public spaces, the quality

and availability of government services, the risk of communicable disease, and other social harms." *Id.*

### III. Recent Cases Demonstrate That The District Court Misapplied The Proximate-Causation Standard

The district court misapplied governing causation law when it held that the acts of third parties – doctors, pharmacists, and "diversion of the drugs to illegal usage" – absolved Appellees of responsibility, because it mischaracterized them as "intervening causes," without considering whether they were *concurrent* causes of the opioid crisis in Cabell/Huntington. 609 F. Supp. 3d at 482; *see* Appellants' Br. 71-74 (discussing *Evans v. Farmer*, 133 S.E.2d 710, 717 (W. Va. 1963), and other West Virginia cases). The court compounded this error by failing to analyze whether intervening acts, such as unlawful diversion of opioids, were reasonably foreseeable, such that they could not break the causal chain. *See* Appellants' Br. 75- 77 (discussing *Sergent v. City of Charleston*, 549 S.E.2d 311, 320 (W. Va. 2001), and other West Virginia cases). Recent opinions highlight the district court's legal error.

The West Virginia Intermediate Court of Appeals recently held that an opioid manufacturer could be the proximate cause of injuries caused by the ingestion of prescribed opioids, despite the intervening acts of the prescribing doctors and ingesting mothers. *See A.D.A.*, 912 S.E.2d at 63-64. It quoted the WVSCA's opinion in *Mays v. Chang*, 579 S.E.2d 561 (W. Va. 2003) (per curiam), for the proposition that causation requires showing that the defendant's breach of duty (in the negligence context) "'was *a* proximate cause of the plaintiff's injury, not *the sole proximate* cause.'" *Id.* at 63 (quoting *Mays*, 579 S.E.2d at 565) (emphasis added). The court observed that, under governing West Virginia case law, a patient's ingestion of medication her doctor lawfully prescribed her "would not in and of itself be a significant intervening cause that defeats proximate causation" where the manufacturer failed to warn doctors and patients of the risk. *Id.* at 63-64.

In a case brought by West Virginia cities and counties alleging opioid-related public nuisance and other claims, a federal district court similarly held that, "[u]nder West Virginia law, the acts of third parties, including criminal activity or intentional misconduct, do not constitute an intervening cause or eliminate a duty of care if the conduct was foreseeable." *Ohio Cnty. Comm'n v. Express Scripts, Inc.*, 2024 WL 5701504, at *15 (N.D. W. Va. Dec. 23, 2024). The court relied on *Wal-Mart Stores East, L.P. v. Ankrom*, 854 S.E.2d 257, 268 (W. Va. 2020), discussed in Appellants' Brief (at 71-74).

The *Ohio County* court also cited the WVSCA's decision in *Boyce v. Monongahela Power Co.*, 894 S.E.2d 913 (W. Va. 2023), in which the WVSCA discussed "the intertwined nature of foreseeability and proximate cause," *id.* at 920, and noted that it has "emphasized that foreseeability is a key factor in deciding whether intervening cause applies," *id.* at 923. The *Boyce* court restated the rule: "'A tortfeasor whose negligence is a substantial factor in bringing about injuries is not relieved from liability by the intervening acts of third persons if those acts

were *reasonably foreseeable* by the original tortfeasor at the time of his negligent conduct.'" *Id.* (quoting Syl. pt. 13, *Anderson v. Moulder*, 394 S.E.2d 61, 64 (W. Va. 1990)) (emphasis in *Boyce*); *see also Campbell v. Kuhnle Bros., Inc.*, 2024 WL 4216638, at *9 (N.D. W. Va. Sept. 17, 2024) (finding harm foreseeable and quoting *Post v. Amerisourcebergen Corp.*, 2020 WL 6438349, at *6 (N.D. W. Va. Nov. 2, 2020), for the same proposition). Based on these statements of the rule and finding the acts of third parties foreseeable, the *Express Scripts* court rejected the defendants' argument that their actions were "too far removed." *Express Scripts*, 2024 WL 5701504, at *15.

The Ninth Circuit ruled against Appellee McKesson in an opioid case on similar grounds. *See AIU Ins. Co. v. McKesson Corp.*, 2024 WL 302182, at *3-4 (9th Cir. Jan. 26, 2024); *accord AIU Ins. Co. v. McKesson Corp.*, 2024 WL 3643086, at *6 (N.D. Cal. July 30, 2024) (denying McKesson's subsequent motion for summary judgment). In that case, McKesson "assert[ed] that the conduct of downstream actors including doctors, pharmacists, and opioid addicts who turned to heroin more immediately produced the injuries and must be deemed an additional, unexpected, independent, and unforeseen happening." 2024 WL 302182, at *3. The Ninth Circuit "reject[ed] this argument," because the actions of doctors, pharmacists, and users "were the functionally inevitable and entirely foreseeable results of the deliberate conduct McKesson is alleged to have engaged in" when it "intentionally oversuppl[ied] opioids on a massive scale." *Id.* at *4. "[T]he direct result[s]" – namely, "opioid addiction, overdoses, and death" – "were not unexpected or unforeseen." 2024 WL 3643086, at *4. In denying McKesson's motion for summary judgment on remand, the district court held that "it was objectively foreseeable 1) failure to maintain effective controls against diversion would lead to diversion, and 2) diversion of McKesson's opioid shipments would result in" the alleged injuries. *Id.* at *5. It held that the "diversion of an order deemed suspicious, but nonetheless shipped pursuant to McKesson's policy, is not an unforeseen, intervening event." *Id.*

Another State that, like West Virginia, follows the Restatement (Second) recently held that, under the Restatement, "a nuisance causing activity includes 'all acts that are a cause of harm,'" such that "a defendant is liable for nuisance 'not only when he carries on the activity but also when he participates to a substantial extent in carrying it on.'" *State ex rel. Jennings v. Monsanto Co.*, 299 A.3d 372, 384 (Del. 2023) (quoting Restatement (Second) § 834 & comment b in a non-opioid public nuisance action).

The federal district court in *Amneal Pharmaceuticals* rejected the defendants' (including Appellees) argument that opioid public nuisance claims against them were too attenuated. *See* 2023 WL 6323797, at *5 (rejecting "Distributor Defendants[']" argument that "they do not manufacture the opioids, they do not market the opioids, and there are no factual allegations to place them in the 'causal chain'").

## CONCLUSION

For the foregoing reasons and those in Appellants' briefs (Dkts. 82, 93), this Court should reverse the district court's judgment.

Respectfully submitted,

*/s/ David C. Frederick*
David C. Frederick

*Counsel for Plaintiffs-Appellants*

cc: Counsel of Record

# CERTIFICATE OF COMPLIANCE

This letter complies with the type-volume limitation set forth in the Court's Order dated May 15, 2025 (Doc. No. 139) because it does not exceed 10 pages in length.

Dated: May 30, 2025                     <u>*/s/ David C. Frederick*</u>
                                                            David C. Frederick
                                                            *Counsel for Plaintiffs-Appellants*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 30, 2025, I electronically filed the foregoing Letter with the Clerk of Court using the CM/ECF System. Counsel for all parties are registered CM/ECF users and will be served with the foregoing document by the Court's CM/ECF System.

                                                */s/ David C. Frederick*
                                                David C. Frederick
                                                *Counsel for Plaintiffs-Appellants*